UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION AT LONDON**

| | |
|---|---|
| CARMELA RENEE JACKSON, | ) |
| | ) |
| Plaintiff, | ) Action No. 6:16-CV-00074-JMH |
| | ) |
| v. | ) |
| | ) **MEMORANDUM OPINION AND ORDER** |
| NANCY J. BERRYHILL, | ) |
| Acting Commissioner of | ) |
| Social Security[1] | ) |
| | ) |
| Defendant. | ) |

\*\* \*\* \*\* \*\* \*\*

This matter is before the Court on the parties' cross-Motions for Summary Judgment (DE 12, 13) on Plaintiff's appeal of the Commissioner's denial of her application for disability insurance benefits.[2] The matter having been fully briefed by the parties is now ripe for this Court's review.[3]

**I.**

In determining whether an individual is disabled, an Administrative Law Judge ("ALJ") uses a five step analysis:

1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

---

[1] The caption of this matter is amended to reflect that Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin in that role.
[2] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.
[3] Plaintiff has also filed a Motion for Leave to File Excess Pages [DE 11], which the Court granted [DE 14].

1

2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520(1982)).

## II.

Carmela Renee Jackson ("Jackson" or "Plaintiff") filed an application for Disability Insurance Benefits and Supplemental Security Income on September 27, 2012, alleging disability commencing on September 1, 2012. (Tr. 24). After being denied initially and upon reconsideration, Plaintiff filed a Request for Hearing on October 4, 2013. (Tr. 24). Her case was heard by

Administrative Law Judge (ALJ) Tommye C. Mangus, who issued an unfavorable decision on April 8, 2015. [Tr. 21-42]. Plaintiff had previously applied and been denied after a hearing in front of an ALJ in 2009 and ALJ Mangus adopted those findings as required by *Drummond v. Comm'r of Social Sec.*, 126 F.3d 837 (6th Cir. 1997) (Tr. 24).

In the denial decision, the ALJ found Plaintiff had severe degenerative disc disease and degenerative joint disease of the lumbar and cervical spine, obesity, and depression, but that these impairments did not meet or equal a presumptively disabling impairment listed at 20 C.F.R. Part 404, Subpart P, App. 1 [Tr. 27]. Plaintiff had not engaged in substantial gainful activity since the application date of September 27, 2012. The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light exertion work as defined in 20 CFR 416.967(b) that required no climbing ladders, ropes, or scaffolds; no crawling; occasional stooping, bending, or crouching; no exposure to dangerous moving machinery and unprotected heights; an option to alternate between sitting and standing every 30 minutes; and no production-rate quota work (Tr. 28). The Appeals Council denied Plaintiff's request for review (Tr. 1-4), making the ALJ's decision final. *See* 20 C.F.R. § 416.1481. This appeal followed.

Plaintiff contends the ALJ's finding of her RFC is not supported by the treating or examining evidence of record, that

the lay testimony proves she is totally disabled, that the ALJ committed reversible error in failing to apply the Sixth Circuit pain standard, and that the vocational expert's testimony proves Plaintiff is totally disabled. Plaintiff argues when determining her Residual Functional Capacity (RFC), the ALJ failed to give proper weight to her treating physicians.

Plaintiff was 43 years old as of the ALJ's April 2015 decision and she has an 11th-grade education (Tr. 190). Plaintiff's earning record showed no earnings since 1997, and less than twenty thousand dollars total in her lifetime (Tr. 144). Plaintiff's treatment occurred primarily at Red Bird Clinic (RBC) and Mercy Pain Clinic (MPC). The medical evidence from RBC and MPC provide a history of evaluation and treatment most often for complaints of chronic neck and lower back pain. The RBC and MPC records primarily consist of routine follow-up for medication refills; they show similar findings, conclusions, and conservative treatment regimens.

In August 2012, Cesar O. Agtarap, M.D. at MPC evaluated Plaintiff (Tr. 324-327, 329-332). Plaintiff complained of dull, achy, throbbing neck and low back pain, radiating to her hips, legs, and shoulders. She reported the severity of pain to be 8 on a scale of 1-10 (10 being worse). Dr. Agtarap diagnosed Plaintiff with chronic pain, moderate to severe; lumbar radiculopathy; lumbago; degenerative disc disease; lumbar spine spondylosis; intervertebral disc disorder; spinal stenosis; sciatica; obesity;

4

osteoarthritis; sacroiliac pain; facet arthropathy; and opioid dependence. Dr. Agtarap administered a steroid injection of 2 cc's of 5% Bupivacaine into her sacroiliac joint (Tr. 328).

One month later, Plaintiff was again evaluated at MPC. This evaluation resulted in a similar diagnoses to that of the previous month, with a reported pain severity of 5 (Tr. 320-323). A late October 2012 follow-up evaluation noted that Plaintiff continued to complain of a dull, achy, throbbing neck and low back pain, radiating to her hips, legs, and shoulders, and she reported a pain level of 7-8 on a scale of 1-10 but was able to sleep 7-8 hours per night with medication. Again, Dr. Agtarap provided a very similar diagnoses, and noted that Plaintiff was "stable" (Tr.316-319).

In October 2012 Plaintiff again visited MPC with pain levels around 7-8 out of 10 in her neck, low back, hips, legs, and shoulders. The diagnosis was essentially unchanged.

Plaintiff was examined at RBC throughout this same time period. In early August 2012 Plaintiff reported abdominal, back, and leg pain and headaches, with a diagnoses of hypertension; major depressive disorder; gastroesophageal reflux disease; osteoarthritis; fatigue; and insomnia; and a colonoscopy screening was suggested (Tr. 412-413). Plaintiff's visits to RBC also continued in 2014 and 2015, at least intermittently. A February 2014 RBC examination and treatment record noted that Plaintiff's

chief complaint was a urinary tract infection, and her diagnosed conditions consisted of hypertension; thyroid disease; hyperlipidemia; arthritis; back pain; depression; human papilloma virus (HPV); irritable bowel syndrome (IBS); and chronic neck pain (Tr. 406, 410). In September 2014, Plaintiff was seen for hypertension as well as leg and back pain (Tr. 398). Her prescription medications were refilled (Tr. 400, 402-404). In January 2015, a nurse practitioner at RBC diagnosed Plaintiff with scabies; allergic rhinitis; obesity; and hypertension (Tr. 393, 395). None of Plaintiff's treating providers at MPC or RBC provided opinions regarding the nature and severity of Plaintiff's alleged impairments or her functional limitations.

In April 2012, Plaintiff was evaluated by psychiatrist, John Allahham, M.D. (Tr. 279-285). This report included an attached drug screen that showed a significantly high level of Oxycodone. Dr. Allahham's report shows that Plaintiff presented with reports of depression and feeling "nervous." Plaintiff denied any psychotic manifestations and/or suicidal ideation and professed to normal activities of daily living including caring for two children in a single parent home. On mental status examination, Plaintiff was alert and possessed normal psychomotor activities, speech, thought processes, and stable affect. Insight and judgment were normal and she appeared to have average intellect and an intact memory. Dr. Allahham's diagnoses were dysthymia and rule out

generalized anxiety disorder with a global assessment of functioning (GAF) rating of 75, denoting expectable reactions to typical stressors. He estimated Plaintiff had a highest GAF of 85 in the preceding 12 months, which is indicative of an individual with no or minimal symptoms, who is generally satisfied with life, and has no more than everyday problems or concerns (Tr. 283-85). He prescribed antidepressants and anxiety medication (Prozac, Remeron and Valium) (Tr. 279-85). There are no further records from Dr. Allahham contained in the administrative record.

In early May 2013, Timothy L. Baggs, Psy.D., examined Plaintiff in connection with her application for SSI (Tr. 381-87). Plaintiff reported her psychological distress or problem to be "I get depressed." She reported decreased motivation, and stated, "Life's hard. That's about it." although she claimed to be symptomatic for 15 years (Tr. 383). Plaintiff admitted that she had never required psychiatric hospitalization and was only seen as an outpatient on two occasions. Dr. Baggs found that Plaintiff did not appear to be experiencing any significant psychological distress, and recorded essentially normal findings (Tr. 386). On mental status examination, Plaintiff's predominant mood appeared neutral; affect was congruent with mood; and thought processes appeared to demonstrate reality contact. There was no suggestion of mental confusion or disorientation and Plaintiff denied any homicidal or suicidal ideation. Dr. Baggs estimated Plaintiff's

intellectual functioning to be in the low average range. Insight and personal judgment were also deemed to be average. Plaintiff was oriented to person, place, and time; with her recent and remote memory appearing intact.

Dr. Baggs opined that Plaintiff retained the ability to understand and remember simple instructions with only a mild deficiency in her ability to maintain and sustain concentration and persistence in the completion of tasks in a normal amount of time (Tr. 386-387). Dr. Baggs reported that his observations were suggestive of an individual who probably could relate adequately with people in either a workplace environment or social setting (Tr. 387). Dr. Baggs opined that Plaintiff's ability to adapt and to respond effectively to pressures found in normal work settings was deemed commensurate with the average worker, and that her prognosis was "fairly good" (Tr. 386-87). During the administrative proceedings, state agency medical consultants Alex Guerrero, M.D., and Laura Cutler, Ph.D., reviewed Plaintiff's records and assessed limitations consistent with a range of light work, with the absence of a severe mental impairment (Tr. 123-26).

At the most recent ALJ hearing on January 29, 2015, Plaintiff, her attorney, and Vocational Expert Dr. James Miller appeared before the ALJ (Tr. 23, 43-62). Plaintiff testified that she had an eleventh-grade education and had not done any work since 1997. She stated her height is 5 feet, four inches, and her weight is

about 240 pounds (Tr. 49-50). Plaintiff described her back as having a "dull, throbbing, aching, stabbing pain that goes into my left hip, sometimes in my right. But mostly into my left hip and then goes into my leg." (Tr. 50).

She explained further about her hip and leg pain moving about with certain activities, saying, "every 15 to 20 minutes I have to go from one hip to the other hip. So I can lay on my back a few minutes, you know, but I'm all the time having to move positions. Because I have arthritis, he said, in both hips." (Tr. 50-51].

She testified about the pain medications she is taking as follows:

> Suboxone helps but not like the pain medicine helps. And Meloxicam, I couldn't live without it. Because if I just miss a day or two, I can tell my fingers. I got joint, arthritis in my joints of my hands. They're real sore. I've got knots and stuff on them. And if I don't take Meloxicam, I couldn't even get out of the bed. I would have to have someone come help me get up. You know, I have trouble anyway but they do help. I have to stay in Meloxicam. I've been on them for a while. And I also use heat pads and cold packs too."

(Tr. 51). She added that Dr. John Gilbert, a physician at the first pain clinic she went to, suggested surgery and weight loss (Tr. 51).

The ALJ asked a vocational expert a hypothetical question as to an individual of Plaintiff's vocational profile who could do a range of light exertion work that involved no climbing ladders,

9

ropes or scaffolds; no crawling; occasional climbing stairs and ramps; occasional stooping, bending, or crouching; no exposure to dangerous moving machinery and unprotected heights; an option to alternate between sitting and standing every 30 minutes; and no production-rate quota work (Tr. 59). The expert testified that the individual could do the representative light exertion positions of hand packer, small product inspector, non-quota production worker, and hand assembler; and indicated that his testimony was consistent with the Dictionary of Occupational Titles (DOT) (Tr. 59-60).

### III.

When reviewing a decision made by the ALJ, the Court may not "'try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). "The ALJ's findings are conclusive as long as they are supported by substantial evidence." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted). Substantial evidence "'means such relevant evidence as a reasonable mind might accept.'" *Foster*, 279 F.3d at 353 (quoting *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1991)).

### IV.

Plaintiff argues the ALJ's erred by not giving "great weight" to the medical opinions and diagnoses of Plaintiff's treating physicians. Plaintiff is correct that the "treating physician rule" requires the ALJ to give controlling weight to the opinions of treating doctors if those opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques. 20 CFR § 416.927(c)(2). The Acting Commissioner is correct, however, in pointing out that this argument is inapposite here because there are no treating physicians who opinioned on Plaintiff's physical impairments or functional limitations within the meaning in the regulation. A medical opinion is defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), and your physical or mental restrictions." 20 CFR § 416.9527(a)(2). No such opinion exists in the record; accordingly, there was no treating physician opinion which could have been given controlling weight. The ALJ has no duty to give observations in medical notes "controlling weight or provide good reasons for not doing so" when those observations are not medical judgments or opinions under the regulations and are based largely on the patient's own reports. *Bass v. McMahon*, 400 F.3d 506, 510 (6th Cir. 2007).

Plaintiff's second and third arguments—which purport to challenge the ALJ's treatment of lay testimony and application of

11

the "pain standard"—are essentially challenges to the ALJ's finding that her statements as to the intensity, persistence, and limiting effects of her symptoms were not supported by the record. [DE 15, Pl.'s Br. at 21-23]. The ALJ's analysis of Plaintiff's symptom complaints is entitled to particular deference from this Court. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying,"). Here, the ALJ extensively reviewed Plaintiff's record and concluded that her "RFC assessment is supported by the clinical and diagnostic evidence of record" (Tr. 36).

Despite Plaintiff's assertions otherwise, the ALJ clearly set forth his reasons for his conclusions regarding Plaintiff's credibility. The ALJ reasonably concluded that Plaintiff's own inconsistent statements cast doubt on the believability of her subjective complaints (Tr. 35). For example, the ALJ found "the claimant's testimony regarding the degree of diminished functional ability is at odds with her report to pain management that her medications allowed for the completion of daily activities including at one point, ***housekeeping work***." (Tr. 35)(emphasis in original). Furthermore, Plaintiff's lack of work history, inconsistent statements about the effectiveness of pain

management, conservative treatment regimen, and generally unremarkable examinations also appropriately factored into the ALJ's analysis of her subjective complaints (Tr. 35-36). *See* 20 C.F.R. § 416.929(c)(3) (stating an ALJ must consider evidence about a claimant's prior work record); *Matula v. Comm'r of Soc. Sec.*, 2013 WL 6713829 at *7 (E.D.Mich., Dec.20, 2013) (it is "appropriate for ALJ to consider poor work history when evaluating credibility").

Plaintiff's argument regarding the "pain standard" is likewise misplaced. She cites *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994), but the so-called pain standard derives from 20 C.F.R. § 416.929. While the Court in *Felisky* held that it was error to rely on lack of objective evidence alone to discount a claimant's claims about the severity of her pain, that is not what the ALJ did here. Rather, the medical opinions, Plaintiff's inconsistent statements, and her course of treatment all supported the ALJ's finding that her symptoms were not as severe as she alleged.

Finally, Plaintiff inarticulately argues—to the best the Court can construe—that the hypothetical question posed to the vocational expert should have included Plaintiff's subjective complaints of pain and reports of limitations. As noted above, the ALJ discounted some of Plaintiff's subjective claims regarding her pain levels and functional limitations as not credible. Accordingly, these were not included in the RFC determination, and

the RFC determination was properly utilized in the hypothetical questions posed to the vocational expert. The ALJ was not required to incorporate limitations reported by Plaintiff that he found to be not credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

**V.**

Having reviewed the entire administrative record, the Court concludes that ALJ Mangus' decision, which ultimately became that of the Acting Commissioner, is supported by substantial evidence.

Accordingly, **IT IS ORDERED** herein as follows:

(1) That the Acting Commissioner's motion for summary judgment [DE 13] be, and the same hereby is, **GRANTED.**

(2) That Plaintiff's motion for summary judgment [DE 12] be, and the same hereby is, **DENIED.**

(3) That the Acting Commissioner's final decision be, and the same hereby is, **AFFIRMED.**

A separate judgment in conformity herewith shall this date be entered.

This the 28th day of September, 2017.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge